**23**

1  MICHAEL T. FOGARTY (#65809)
2  MARK GORTON (#99312)
   MICHAEL J. KUZMICH (#210088)
3  **BOUTIN JONES INC.**
   Sacramento Offices
4  555 Capitol Mall, Suite 1500
   Sacramento, CA  95814
5  Telephone:    (916) 321-4444
   Facsimile:    (916) 441-7597
6  Email:    tfogarty@boutinjones.com
             mgorton@boutinjones.com
7             mkuzmich@boutinjones.com

8  Attorneys for defendant Antioch Loan, LLC

9              UNITED STATES BANKRUPTCY COURT

10             EASTERN DISTRICT OF CALIFORNIA

11                  (Sacramento Division)

12  In re                              )  **Case No.  12-33698-D-11**
                                       )
13  2 ANTIOCH, LLC.                    )  Chapter 11
                                       )
14          Debtor and Debtor-In-      )
                Possession             )
15                                     )
    _____)
16                                     )
    2 ANTIOCH, LLC,                    )  **Adv. Proc. No. 12-02705**
17                                     )
            Debtor-Plaintiff,          )
18                                     )
    v.                                 )  **OPPOSITION TO MOTION TO**
19                                     )  **DISMISS ADVERSARY**
    ANTIOCH LOAN, LLC; OXFORD          )  **PROCEEDING**
20  INVESTOR PARTNERS, LLC;            )
    WALTER CLARKE; PAUL                )
21  BUCHHEIT; WILLIAM J. MILLER and    )  Date:        November 27, 2013
    SANDRA B. MILLER, TRUSTEES OF      )  Time:        10:00 a.m.
22  THE MILLER FAMILY TRUST U/A        )  Location:    Dept D, Courtroom 34
    02/07/2000; FREDERICK C. HEITMAN   )             501 I Street, 6th Floor
23  and DONNA R. HEITMAN, TRUSTEES     )             Sacramento, CA  95814
    OF THE FREDERICK & DONNA           )  Judge:       Hon. Robert S. Bardwil
24  HEITMAN TRUST U/A 09/09/88; JOHN   )
    BUCHHEIT; LINDA HOUGHTON;          )
25  PATTY S. BEEM; DOES 1 THROUGH      )
    25, Inclusive,                     )
26                                     )
            Defendants                 )
27  _____)

28

OPPOSITION TO MOTION TO DISMISS ADVERSARY PROCEEDING

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY ......................................................2

    A.    2006:  CMR II makes two $5.5 million loans secured by DOT # 1 and DOT # 2. .......2

    B.    2006-2008:  both DOT # 1 and DOT # 2 are assigned by CMR II and Debtor-Plaintiff eventually forecloses DOT # 2. ............................................................3

    C.    2009-2011:  the CMR entities file for Chapter 11 protection and obtain court approval to execute the Standstill Agreement. ....................................3

    D.    2012:  Defendant obtains relief from the automatic stay in the CMR bankruptcies and Debtor-Plaintiff files this Chapter 11 to stop the trustee's sale. ...................................4

    E.    December 2012:  Debtor-Plaintiff files the Complaint, which alleges a dispute regarding the validity, extent, and priority of DOT # 1 and DOT # 2. .....................5

    F.    2013:  Defendant obtains relief from the automatic stay (for the second time) and forecloses DOT # 1. ....................................................................6

    G.    April-August 2013:  Debtor-Plaintiff continues to prosecute its *pari passu* claim after Defendant's foreclosure. .......................................................7

    H.    August-October 2013:  Debtor-Plaintiff confirms its intention to prosecute this action — until the Court issues an adverse tentative ruling granting Defendant's motion for summary judgment. ....................................................................8

III.  SUMMARY OF DEBTOR-PLAINTIFF'S MOTION TO DISMISS ......................9

IV.   LAW AND ARGUMENT ...................................................................................11

    A.    This Court has jurisdiction over the first and second claims for relief. ...................11

    B.    Standards for ruling on motions for dismissal under Rule 41(a)(2). ..........................13

    C.    The Court should dismiss the *pari passu* claim in the first and second claims for relief with prejudice. ...........................................................14

    D.    In the alternative, the Court should condition a dismissal without prejudice on Debtor-Plaintiff's payment of Defendant's costs and attorneys' fees, and impose any other conditions/sanctions that the Court deems proper. ...........................17

V.    CONCLUSION ....................................................................................................19

572168.5

# TABLE OF AUTHORITIES

**Cases**

*Burnette v. Godshall*
  828 F.Supp. 1439 ........................................................................ 13

*Burnette v. Lockheed Missiles & Space Co., Inc.*
  72 F.3d 766 .............................................................................. 13

*Chambers v. United States*
  22 F.3d 939 .............................................................................. 13

*Edstrom v. NDEX West, LLC*
  2012 WL 4092420 at * 2 .............................................................. 14

*H.K. & Shanghai Banking Corp.*
  *Ltd. v. Simon (In re Simon)*, 153 F.3d 991 ................................... 11

*Helio, LLC v. Palm, Inc.*
  2007 WL 1063507 at * 2 .............................................................. 15

*In re Bellingham Ins. Agency, Inc.*
  702 F.3d 553 ........................................................................ 12, 13

*Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*
  273 B.R. 374 ............................................................................. 12

*Lau v. Gledora Unified School Dist.*
  792 F.2d 929 ........................................................................ 17, 19

*Maxum Indem. Ins. Co. v. A-1 All American Roofing Co.*
  299 Fed.Appx. 664 ........................................................ 1, 14, 15, 17

*Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*
  138 B.R. 442 ............................................................................. 12

*Sams v. Beech Aircraft Corp.*
  625 F.2d 273 ............................................................................. 17

*Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*
  387 B.R. 95 ............................................................................... 12

OPPOSITION TO MOTION TO DISMISS ADVERSARY PROCEEDING

572168.5

*Stern v. Marshall,*
— U.S. — 131 S.Ct. 2594 ................................................................................ 12

*Stevedoring Services of America v. Armilla Int'l B.V.*
889 F.2d 919 ........................................................................................... 13, 18

*Templeton v. Nedlloyd Lines*
901 F.2d 1273 ................................................................................................ 19

*Terranova v. Kincheloe*
852 F.2d 424 ........................................................................................... 14, 17

*Westlands Dist. v. United States*
100 F.3d 94 .................................................................................. 13, 14, 18, 19

*Williams v. Peralta Comm. College Dist.*
227 F.R.D. 538 .............................................................................................. 13

*Yong v. I.N.S.*
208 F.3d 1116 ................................................................................................ 13

**Statutes**
28 U.S.C. §157(a) ............................................................................................ 12
28 U.S.C. §157(b)(1) ....................................................................................... 12
28 U.S.C. §1334(e)(1) ..................................................................................... 11
Bankruptcy Code §541 .................................................................................... 11
Bankruptcy Rule 7041 ..................................................................................... 13
Federal Rule of Civil Procedure 41(a)(1) ...................................................... 13
Federal Rule of Civil Procedure 41(a)(2) ........................................... 13, 14, 17

**Title 28**
Section 1334(b) ............................................................................................... 11

iii

## I.   INTRODUCTION

Debtor-Plaintiff 2 Antioch LLC ("Debtor-Plaintiff"), its 100% member CMR Mortgage Fund III, LLC ("CMR III"), its manager California Mortgage and Realty, Inc. ("CMR"), and the humans pulling the strings — David Choo and Graham Seel — have invoked this Court's jurisdiction by asking it to magically transform a first deed of trust ("DOT # 1") and second deed of trust ("DOT # 2") into *pari passu* deeds of trust so Debtor-Plaintiff's bankruptcy estate can claim an equitable interest in real property owned by defendant Antioch Loan LLC ("Defendant").

Defendant recently moved for summary judgment on this *pari passu* claim based on evidence that is clean and clear.  The plain language of DOT # 2, the loan agreements, and the Standstill Agreement — combined with Graham Seel's testimony to the Northern District — all confirm that DOT # 1 was senior to DOT # 2.  This Court's tentative ruling agreed "across the board" with Defendant's legal analysis, which included judicial estoppel, equitable estoppel, and waiver.  Faced with this adverse tentative ruling, Debtor-Plaintiff played the only card left:  filing motions to dismiss its Chapter 11 case and this Adversary Proceeding.

Under Ninth Circuit law, it is appropriate to dismiss claims with prejudice when a plaintiff, like Debtor-Plaintiff herein, is seeking a dismissal "only to avoid a near-certain adverse ruling." *Maxum Indem. Ins. Co. v. A-1 All American Roofing Co.*, 299 Fed.Appx. 664, 666 (9th Cir. 2008). Further, Debtor-Plaintiff's purported reasons for seeking this dismissal — because CMR III might have an interest in the claim and the CMR trustee should be involved — are easily refuted.  The CMR trustee already concluded that CMR III/Debtor-Plaintiff held no equity in the property and he did not oppose Defendant's (first) motion for relief from stay to foreclose DOT # 1 in the Northern District, which is what prompted this Chapter 11.  Further, Debtor-Plaintiff's Schedules and Complaint confirm that Debtor-Plaintiff, not CMR III, owns this *pari passu* claim.

Debtor-Plaintiff made its bed by filing this motion as a last-ditch effort to avoid summary judgment — and now must sleep in it.  Under these facts, the Court has discretion and good cause to dismiss Debtor-Plaintiff's *pari passu* claim with prejudice.

In the alternative, the Court should condition a dismissal on appropriate terms, including, at a minimum, the payment of Defendant's attorneys' fees and costs.

572168.5

## II.    FACTUAL AND PROCEDURAL HISTORY

This adversary proceeding is the culmination of many events occurring over the past several years, and the timeline below is necessary to demonstrate why Debtor-Plaintiff's *pari passu* claim set forth in the first and second claims for relief should be dismissed <u>with prejudice</u>.[1]

### A.    <u>2006</u>:  CMR II makes two $5.5 million loans secured by DOT # 1 and DOT # 2.

This adversary proceeding arises from two $5.5 million loans made by lender CMR Mortgage Fund II, LLC ("<u>CMR II</u>") to borrower PIH-Antioch, LLC ("<u>Borrower</u>") secured by deeds of trust to real property located in Antioch, California (the "<u>Property</u>").  Both deeds of trust were recorded on November 1, 2006:  DOT # 1 secured Loan # 06-071A ("<u>LOAN A</u>") and DOT # 2 secured Loan # 06-071B ("<u>LOAN B</u>").  AP Docket # 51 (Antioch Loan LLC's Exhibits in Support of Motion for Summary Judgment/Partial Summary Judgment ["<u>MSJ Exhibit</u>"] ## 1, 4-9).

Defendant incorporates the summary of LOAN A/DOT # 1 and LOAN B/DOT # 2 set forth at page 2 of its Points and Authorities in Support of Summary Judgment ("<u>Points and Authorities</u>") and in its Statement of Undisputed Material Facts ("<u>SUF</u>").  AP Docket ## 48-49.  In sum, DOT # 2 states it is "<u>junior in priority</u>" to DOT # 1, and the LOAN A and LOAN B Loan Agreements confirm they are secured by first and second deeds of trust, respectively.  AP Docket # 51 (MSJ Exhibit ## 6-7 [quoted language at DOT # 2 at ¶ 1], 9).

---

[1]  Debtor-Plaintiff's motion to dismiss cites to and relies on the Exhibits and evidence filed in support of Defendant's pending motion for summary judgment.  *See* AP Docket # 77, Debtor-Plaintiff's Points and Authorities in Support of Motion to Dismiss ("<u>Motion to Dismiss AP</u>") at pg. 2, fn. 1.  In the interests of efficiency, economy, and convenience, Defendant relies on this same evidence that is already before this Court.

Also, Defendant's summary of events makes reference to documents filed in multiple bankruptcy dockets:  (1) the consolidated docket in *In re CMR Fund, LLC*, U.S. Bankruptcy Court, Northern District of California, Case No. 08-32220 ("<u>Main CMR Docket</u>"); (2) *In re CMR Fund II, LLC*, U.S. Bankruptcy Court, Northern District of California, Case No. 09-30788 ("<u>CMR II Docket</u>"); (3) *In re 2 Antioch, LLC*, U.S. Bankruptcy Court, Eastern District of California, Case No.  12-33698 ("<u>Main 2 Antioch Docket</u>"); and (4) *2 Antioch, LLC, v. Antioch Loan, LLC, et al.*, U.S. Bankruptcy Court, Eastern District of California, Adversary Proceeding Case No. 12-02705-D ("<u>AP Docket</u>").

For documents that were included with Defendant's motion for summary judgment, reference is made to the original docket and to the corresponding motion for summary judgment exhibit (part of AP Docket # 51).  Documents related to Defendant's first motion for relief from the automatic stay, which were filed in the Main CMR Docket, are included as Defendant's Exhibits in Support of Opposition to Motion to Dismiss ("<u>MTD Exhibit</u>") ## 7-10.

1
2

**B.**    __2006-2008__:  **both DOT # 1 and DOT # 2 are assigned by CMR II and Debtor-Plaintiff eventually forecloses DOT # 2.**

3    Defendant incorporates the summary of the assignments of DOT # 1 and DOT # 2 set forth at

4   pages 3-4 of its Points and Authorities and SUF.  AP Docket ## 48-49.  In short, LOAN A and DOT

5   # 1 were first assigned from CMR II to the Oxford Investors, and then from the Oxford Investors to

6   Defendant, and the "Lender-Purchaser Disclosure Statements" prepared by CMR reflected that

7   LOAN A was secured by a "1st Trust Deed" having $13.5 million in "Protective Equity."  AP

8   Docket # 51 (MSJ Exhibit ## 10-12, 16, 20-23).   LOAN B and DOT # 2 were first assigned from

9   CMR II to CMR III, and then from CMR III to Debtor-Plaintiff, which foreclosed DOT # 2 in

10   August 2008; the "Lender-Purchaser Disclosure Statements" prepared by CMR reflected that LOAN

11   B was secured by a "2nd Trust Deed" having only $8 million in "Protective Equity."  AP Docket # 51

12   (MSJ Exhibit ## 13-14, 17-19).

13
14

**C.**    __2009-2011__:  **the CMR entities file for Chapter 11 protection and obtain court approval to execute the Standstill Agreement.**

15    Defendant also incorporates the summary of the CMR entities and the supporting evidence

16   set forth at pages 4-6 of its Points and Authorities and SUF.  AP Docket ## 48-49.

17    The relevant CMR characters are as follows:

18    □    CMR II, the original lender;

19    □    CMR III, the 100% equity Member of Debtor-Plaintiff;

20    □    CMR, the loan servicer and Manager of CMR II, CMR III, and Debtor-Plaintiff ;

21    □    HMV, Inc. ("HMV"), the successor to CMR and current Manager of Debtor-Plaintiff;

22    □    David Choo, President of CMR/HMV; and

23    □    Graham Seel, Vice President of CMR/HMV.

24    After CMR II and CMR III filed bankruptcy cases in the Northern District, CMR II filed a

25   motion requesting approval of the Amended and Restated Standstill Agreement ("Standstill

26   Agreement") between the CMR entities and the Oxford Investors.  CMR II Docket # 184-1 & 184-2;

27   AP Docket # 51 (MSJ Exhibit ## 29-31).  CMR II's moving papers explained that "[t]he Agreement

28   provides tiered forbearance until as long as May, 2012, to prevent the foreclosure by the Investors of

real property against which they hold senior liens." CMR II Docket # 184-1; AP Docket # 51 (MSJ Exhibit # 29) (emphasis added). Regarding the Property, Graham Seel testified that "the [Oxford Investors] hold a first deed of trust securing a note in the amount of $5.5 million (with a current legal balance of $7.1 million)" and "[CMR III] holds a second deed of trust securing a note in the amount of $5.5 million (with a current legal balance of $6.1 million)." CMR II Docket # 184-2; AP Docket # 51 (MSJ Exhibit # 30).

The proposed Standstill Agreement, as later amended, was approved by the bankruptcy court by Order filed May 11, 2010. CMR II Docket # 387; AP Docket # 51 (MSJ Exhibit # 33).

The final Standstill Agreement was executed by David Choo on behalf of CMR (Manager of CMR II, CMR III, and Debtor-Plaintiff), CMR II (original lender and first assignor of DOT # 1 and DOT # 2), and CMR III (100% Member of Debtor-Plaintiff). AP Docket # 51 (MSJ Exhibit # 15).

**D.    2012:    Defendant obtains relief from the automatic stay in the CMR bankruptcies and Debtor-Plaintiff files this Chapter 11 to stop the trustee's sale.**

In January 2012, the CMR trustee's Third Status Conference Statement stated, *inter alia*,

**5.    2 ANTIOCH, LLC – Loan #06-071B**

The Debtors own 100% of 2 Antioch, LLC due to a foreclosure of loan 06-071B. The property owned by this entity is 50 acres of raw land located at 3941 Neroly Road, Antioch, CA 94561. The property is subject to a 1st trust deed of approximately $6.65 million due to CMR loan 06-071A (Debtors own 0% of this loan). The property has been valued at approximately $5.5 million once fully entitled, but will require an additional $1 million to effect such entitlements. . . . The trustee believes there is no equity in the property, *and is currently in negotiations for a global resolution with Oxford Investment Partners*."

Main CMR Docket ## 950, 950-1 (quote from # 950-1 at pg. 5, underline added; italics in original); Defendant's Exhibits in Support of Opposition to Motion to Dismiss ("MTD Exhibit") # 7.

On February 3, 2012, Defendant filed a motion for relief from the automatic stay in order to foreclose DOT # 1. Main CMR Docket # 960; MTD Exhibit # 8. The CMR trustee filed a statement of non-opposition and the Northern District granted the motion on February 23, 2012. Main CMR Docket ## 967, 975; MTD Exhibit ## 9-10. Defendant thereafter recorded a Notice of Default and a Notice of Trustee's Sale setting a sale for July 26, 2012. AP Docket # 1 (Complaint at ¶ 28).

1    The day before the trustee's sale, Debtor-Plaintiff filed this Chapter 11 bankruptcy action.

2   Main 2 Antioch Docket # 1.  Debtor-Plaintiff's Schedules identified it as the owner of the Property

3   worth $15 million,[2] but subject to Defendant's secured claim of $5,500,000.  Main 2 Antioch Docket

4   # 12.  Debtor-Plaintiff's Chapter 11 Status Report confirmed once again that Defendant holds a

5   senior deed of trust:  "[Debtor-Plaintiff] acquired its 100% interest in the subject property at the

6   completion of a non-judicial foreclosure sale conducted on July 22, 2008, subject to a senior lien in

7   favor of Antioch Loan, LLC, which has a principal balance in the estimated amount of

8   $5,500,000.00."  Main 2 Antioch Docket # 14 at 2:5-8 (emphasis added).

9    The rest of the Status Report discussed Debtor-Plaintiff's intention to make adequate-

10   protection payments to Defendant and identified a potential dispute regarding the value of

11   Defendant's claim — but made no mention of its *pari passu* claim.  Main 2 Antioch Docket # 14 at

12   ¶¶ 2, 4 & 7 (¶ 7 titled "Objection to Claims" states "[t]here may be an issue with the amount claimed

13   to be due and owing by Antioch Loan, LLC.  The Debtor anticipates no other issues with the claims

14   of any other creditors of the estate.").

15    **E.    December 2012:  Debtor-Plaintiff files the Complaint, which alleges a dispute
          regarding the validity, extent, and priority of DOT # 1 and DOT # 2.**

16

17    Debtor-Plaintiff filed its Complaint several months later on December 5, 2012.  AP Docket #

18   1.  The Complaint alleges that Debtor-Plaintiff holds title to the Property, the Property is the

19   property of the bankruptcy estate, the Court has jurisdiction over this proceeding, and this is a "core"

20   proceeding.  AP Docket # 1 (Complaint at ¶¶ 2, 23).[3]  The Complaint further alleges, *inter alia*, that

21   DOT # 1 and DOT # 2 "were at all times understood to be pari passu," or of equal priority, and

22

23   [2]  Despite the CMR trustee's conclusion in January 2012 that the Property would be worth $5.5
     million after receiving $1 million in entitlements, Debtor-Plaintiff represented to this Court in July
24   2012 that the property was worth $15 million.  Main 2 Antioch Docket # 12 (Schedules).  This Court
     later concluded that the Property was worth approximately $5 million.  Main 2 Antioch Docket # 89
25   (order granting motion for relief from stay); Main 2 Antioch Docket # 108 (transcript from hearing
26   at 6:5-7:3, 12:20-13:2).
     [3]  Defendant admitted the Property is the property of the bankruptcy estate.  AP Docket # 9 (Answer
27   at ¶ 2).  Debtor-Plaintiff places great emphasis on the fact that Defendant's Answer denied the
     balance of allegations in paragraph 2, but overlooks that Defendant has not since objected to or
28   challenged this Court's jurisdiction over the first and second claims for relief — and in fact has
     consented to the same by filing the motion for summary judgment.

572168.5

1    "Debtor-Plaintiff and the holders of DOT # 1 are now on equal footing vis a vis their respective

2    interests in and priorities to the subject property."  AP Docket # 1 (Complaint at ¶¶ 32-33).

3         The first claim for relief is titled "<u>DECLARATORY RELIEF TO DETERMINE</u>

4    <u>VALIDITY, EXTENT AND PRIORITY OF LIEN</u>" and seeks a declaration that "(a) the interest of

5    the Debtor-Plaintiff is on equal footing of that of the interests of the Defendants, and (b) that

6    Defendant Antioch Loan, LLC lacks standing [to nonjudicially foreclose DOT # 1]."  AP Docket # 1

7    (Complaint at ¶ 36).

8         The second claim for relief is titled "QUIET TITLE" and alleges, *inter alia*, that "Debtor-

9    Plaintiff has been seized of full title to the subject property and on equal footing with the Defendants

10   at all times since completion of the July 22, 2008 non-judicial foreclosure sale conducted under DOT

11   #2."  AP Docket # 1 (Complaint at ¶ 38).  This claim for relief

12   
13       [S]eeks to quiet title to the subject property in the name of Debtor-Plaintiff and
     against any and all claims of priority by the Defendants.  The claims of priority by the
     Defendants are without any right whatsoever and Defendants have no lien senior to
14   that of Debtor-Plaintiff's right, title, estate, lien or interest in the subject property
     whatsoever.

15   AP Docket # 1 (Complaint at ¶ 40).

16   
17        The third claim for relief for "FRAUDULENT MISREPRESENTATION" is against Walter

18   Clarke and Oxford Investment Partners LLC.  AP Docket # 1 (Complaint at ¶¶ 42-50).  Defendant

19   has no objection to a dismissal of this third, unrelated claim for relief.

20   **F.**    **2013:  Defendant obtains relief from the automatic stay (for the second time) and**
     **forecloses DOT # 1.**

21   
22        Defendant moved for relief from the automatic stay shortly after the Complaint was filed.

23   Main 2 Antioch Docket ## 57-66, 77-79, 89, 91.  In Debtor-Plaintiff's opposition papers, Mr. Seel

24   contradicted his testimony to the Northern District by telling this Court that DOT # 1 and DOT # 2

25   were always intended to hold equal priority "and were never intended to give one set of investors of

26   the CMR Fund the ability to foreclose out another set of investors of the CMR Fund."  Main 2

27   Antioch Docket # 78; AP Docket # 51 (MSJ Exhibit # 27, Graham Seel Decl. at ¶ 6).  Mr. Seel

28   further testified that Debtor-Plaintiff's newfound *pari passu* claim "puts the validity, extent, and

     priority of [DOT # 1] very much at dispute and at issue in this proceeding."  *Id.* (Decl. at ¶ 17).

572168.5

1    This Court granted Defendant's motion, Defendant foreclosed DOT # 1, and Debtor-

2  Plaintiff's appeal to the BAP was dismissed as moot.  Main 2 Antioch Docket ## 57-66, 77-79, 89,

3  91, 94, 115.

4        **G.    April-August 2013:  Debtor-Plaintiff continues to prosecute its *pari passu* claim**
           **after Defendant's foreclosure.**

5

6        By Joint Status Conference Statement filed April 23, 2012, all defendants confirmed they

7  "are <u>not</u> requesting a jury trial with respect to any of the issues framed by the pleadings."  AP

8  Docket # 19.

9        On May 1, 2013, the Court executed the parties' Stipulation and Order dismissing with

10  prejudice the Oxford Investors (who held DOT # 1 prior to their assignment to Defendant).  AP

11  Docket ## 23-24.

12        In the following months, Debtor-Plaintiff continued prosecuting its *pari passu* claim against

13  Defendant.  On July 17, 2013, Debtor-Plaintiff served Request for Production (Set One) to

14  Defendant, which sought, *inter alia*, documents and communications related to DOT # 1 and DOT #

15  2.  MTD Exhibit # 1.  And on August 16, 2013, Debtor-Plaintiff noticed the deposition of

16  Defendant's person most knowledgeable regarding the items in Defendants' Initial Disclosures.

17  MTD Exhibit # 2.

18        Similarly, Debtor-Plaintiff's responses to written discovery confirmed that Debtor-Plaintiff

19  continues to claim an interest in the Property by virtue of its allegation that DOT # 1 and DOT # 2

20  were intended to be *pari passu* such that Debtor-Plaintiff and Antioch Loan are on "equal footing."

21  *See* MTD Exhibit 3 (Response to Special Interrogatory No. 2 dated July 15, 2013); MTD Exhibit # 4

22  (Supplemental Response to Special Interrogatory No. 2 dated July 26, 2013); MTD Exhibit # 5

23  (Deposition of David Choo (August 13, 2013) at 75:12-79:4, 102:4-103:12).

24        In August 2013, David Choo (testifying individually and as Debtor-Plaintiff's person most

25  knowledgeable) confirmed it is "currently" Debtor-Plaintiff's position that DOT # 1 and DOT # 2

26  are *pari passu*.  MTD Exhibit # 5 (Choo Depo. at 75:12-15).  Mr. Choo elaborated that "what the

27  word 'pari passu' means to me is that one does not have the ability to foreclose out the other, <u>and in</u>

28  <u>the event of a foreclosure, it would be the junior loan that would do it, and both would still retain</u>

OPPOSITION TO MOTION TO DISMISS ADVERSARY PROCEEDING

572168.5

1   title to the property either through ownership or the deed of trust." *Id.* (Choo Depo. at 103:4-12).

2       **H.    August-October 2013:** **Debtor-Plaintiff confirms its intention to prosecute this**
        **action — until the Court issues an adverse tentative ruling granting Defendant's**
3       **motion for summary judgment.**

4       On August 23, 2013, ten days after Mr. Choo was deposed, Julian Bach filed a motion to

5   withdraw as counsel. AP Docket ## 32-35. Mr. Bach's declaration confirms that, even post-

6   foreclosure, Debtor-Plaintiff "is seeking redress in this adversary proceeding" based on alleged

7   issues with title to the Property. AP Docket # 34 (Bach Declaration at ¶¶ 4-5). Further, Mr. Bach

8   confirmed that due to a disagreement with respect to the conduct of the case, Debtor-Plaintiff "has

9   indicated a desire to change counsel." *Id.* (Bach Declaration at ¶ 6). Despite Debtor-Plaintiff's

10  decision to hire new counsel, Debtor-Plaintiff failed to engage new counsel in the following weeks.

11      On September 30, 2013, five weeks after the motion to withdraw was filed, Defendant filed

12  its motion for summary judgment challenging Debtor-Plaintiff's *pari passu* claim. AP Docket ##

13  38-63. The motion was served on Mr. Bach and directly on Debtor-Plaintiff. AP Docket # 64.

14      On October 2, 2013, the Court heard and granted Mr. Bach's motions to withdraw as counsel

15  for all purposes. Main 2 Antioch Docket # 135; AP Docket # 67. On October 7, 2013, counsel for

16  Defendant emailed David Choo and Graham Seel, advised them of the pending motion for summary

17  judgment, and offered to forward them a copy of the moving papers. AP Docket ## 68-69

18  (Defendant's Reply Declaration and Exhibits).

19      On October 24, 2013, Debtor-Plaintiff filed Debtor's Application for Order Authorizing

20  Employment of General Counsel. Main 2 Antioch Docket # 138. This Application acknowledged

21  that DOT # 1 had been foreclosed and that "[t]he priority of that trust deed, and the right of the trust

22  deed beneficiaries to foreclose, remains in dispute and is the subject of an adversary proceeding,

23  Case No. 12-12-02705 now pending in this Court." *Id.* (Application at ¶ 4). Nowhere in this

24  Application does Debtor-Plaintiff express any intention to dismiss the main case or this Adversary

25  Proceeding.

26      Also on October 24, 2013, proposed counsel filed a Notice of Appearance in this Adversary

27  Proceeding, which stated that "[t]he undersigned attorneys were retained after the deadline to

28  respond to the pending Motion for Summary Judgment under the applicable local rules" and "[t]hey

572168.5

will appear at the scheduled hearing date, October 30, 2013, <u>to request an extension of time to</u> <u>respond to the Motion.</u>"  AP Docket # 71 (emphasis added).  This Notice of Appearance also does not reflect any intention to dismiss the main case or this Adversary Proceeding.

On October 28, 2013, the Court posted its tentative ruling on the website, which agreed "across the board" with Defendant's legal analysis. AP Docket # 72; MTD Exhibit # 6.  At the hearing held October 30, 2013, Debtor-Plaintiff's proposed counsel objected to the Court's tentative ruling by stating that Debtor-Plaintiff intends to dismiss the main case and this Adversary Proceeding.  The Court expressed concerns regarding post-foreclosure jurisdiction,[4] continued the motion for summary judgment, and invited Debtor-Plaintiff to file its motions to dismiss.

## III.    SUMMARY OF DEBTOR-PLAINTIFF'S MOTION TO DISMISS

Debtor-Plaintiff's motion to dismiss acknowledges there are two aspects of the Complaint. The first is the fraud claim for damages against Walter Clarke and Oxford Investment Partners LLC. AP Docket # 77 (Motion to Dismiss AP at 3:19-23).  The second is Debtor-Plaintiff's claim of "equitable ownership" in the Property:

> The other aspect of the Complaint is styled as an action to "Determine the Validity, Extent and Priority of Lien."  In fact, however, the Complaint alleges the existence of only one trust deed, held of record by Antioch Loan, LLC.  The gravamen of the Complaint is that the Oxford Investors and the other "Certain Investors" (to use the parlance of the Standstill Agreement) should have pari passu interests in the first trust deed.  This aspect of the Complaint is not, therefore, strictly about the priority of liens, since only one lien exists.  It is about the beneficial ownership of the first trust deed lien.

AP Docket # 77 (Motion to Dismiss AP at 4:1-8).  This characterization of the Complaint is disingenuous.  The Complaint clearly alleges the existence of two deeds of trust.  AP Docket # 1 (Complaint at ¶¶ 17-23, 32-34).  Further, it does not mention the Standstill Agreement or other "Certain Investors."  On the contrary, it confirms that Debtor-Plaintiffs is the owner of the Property and, by implication, the owner of the *pari passu* claim and the proper plaintiff.  *Id.*

Debtor-Plaintiff attempts to retreat from its unambiguous allegation that this Court has

---

[4]  As set forth in Section IV.A below, Defendant's foreclosure of DOT # 1 did not affect the Court's jurisdiction over the matters alleged in the Complaint.  In fact, Debtor-Plaintiff's motion to dismiss acknowledges that Debtor-Plaintiff maintains "beneficial ownership" and "equitable ownership" in the Property by virtue of its *pari passu* claim, which claim remains property of the bankruptcy estate.

572168.5

1  jurisdiction over the matters alleged in the Complaint by suggesting this case never was, "strictly

2  speaking," about the priority of liens:

3
4
5
6
> If Antioch Loan, LLC were permitted to now change position and consent to jurisdiction, it would still be unclear as to whether jurisdiction exists.  This is not, strictly speaking, a case about the priority of liens encumbering property of the bankruptcy estate.  The case is in large part about the "Investors'" equitable ownership of the Antioch Loan trust deed, and after foreclosure the equitable ownership of the Property, legal title to which was removed from the bankruptcy estate via the foreclosure sale.

7  AP Docket # 77 (Motion to Dismiss AP at 7:24-8:3).

8         Finally, Debtor-Plaintiff discusses the Standstill Agreement at length (which again is never

9  mentioned in the Complaint) and argues that

10
11
12
13
14
> The Standstill Agreement, which is ambiguous in its references to "Certain Investors" who are said to "indirectly own" both trust deeds and "REO," can be interpreted by others not a party to this adversary proceeding as reflecting that the Debtor took legal title to the Property back in 2008, but that equitable title rested with CMF III and/or "Certain Investors."  Yet, none of these other parties have been impleaded in the adversary proceeding by the Plaintiff Debtor or by Defendant Antioch Loan.  This is especially troublesome because after the Standstill Agreement was entered into a bankruptcy trustee has been appointed in the consolidated CMF chapter 11 case.  His job is to maximize the return to the "Investors" as credited in that case.

15  AP Docket # 77 (Motion to Dismiss AP at 8:4-13).

16         Setting aside Debtor-Plaintiff's attempt to re-characterize the allegations in the Complaint,

17  Debtor-Plaintiff's purported reasons in support of dismissal (because CMR III and others might have

18  an interest in the Property) are easily refuted.  As set forth above, the CMR trustee acknowledged

19  that CMR III owns Debtor-Plaintiff and that Debtor-Plaintiff owned the Property subject to DOT #

20  1.  Main CMR Docket ## 950, 950-1; MTD Exhibit # 7.  With this in mind, the trustee concluded

21  that Debtor-Plaintiff had no equity in the Property.  When Defendant filed a motion for relief from

22  the automatic stay to foreclose DOT # 1, that same trustee filed a statement of non-opposition and

23  the Northern District granted the motion.  Main CMR Docket ## 960, 967, 975; MTD Exhibit ## 8-

24  10.  These events prompted Debtor-Plaintiff to file this bankruptcy case and stop the trustee's sale,

25  and the Debtor-Plaintiff's Schedules, Status Report, and Complaint collectively allege that Debtor-

26  Plaintiff — not CMR III or "Certain Investors" — owns the Property and the *pari passu* claim.

27  Main 2 Antioch Docket ## 12, 14; AP Docket # 1.  In addition, Debtor-Plaintiff wants to pursue its

28  claim for a one-half ownership interest in the Property (worth approximately $5 million) in some

1  other court, but, at the same time, wants to dismiss its Chapter 11 case and leave its creditors unpaid.

2      This full history of the loans, CMR bankruptcies, and proceedings in this Court confirm that

3  Debtor-Plaintiff and its owners will say and do whatever they need, regardless of the truth, to try and

4  line their pockets.  It also confirms that Debtor-Plaintiff prosecuted its *pari passu* claim, even post-

5  foreclosure, until this Court issued its adverse ruling on Defendant's summary judgment motion.

6  Based on this record, the Court can and should dismiss the *pari passu* claim <u>with prejudice</u>.

7  **IV.    LAW AND ARGUMENT**

8      Section IV.A explains that this Court retained jurisdiction over the *pari passu* claim after

9  Defendant's foreclosure of DOT # 1 because Debtor-Plaintiff is claiming an equitable interest in the

10  Property, which claim is property of the bankruptcy estate.

11      Section IV.B explains why the Court has discretion to, and should, dismiss the first and

12  second claims for relief <u>with prejudice</u>.

13      In the alternative, Section IV.C requests that a dismissal without prejudice should include

14  appropriate terms and conditions, including, at a minimum, that the dismissal without prejudice be

15  contingent on Debtor-Plaintiff's payment of Defendant's costs and attorneys' fees.

16      **A.    This Court has jurisdiction over the first and second claims for relief.**

17      Debtor-Plaintiff correctly alleges that this Court has jurisdiction over the Complaint as a core

18  matter.  AP Docket # 1 (Complaint, ¶2, p. 2:6-9).  The first and second claims for relief concern

19  whether and to what extent the Property is property of the estate under Section 541 of the

20  Bankruptcy Code.  Such claims arise under Title 11 and arise in and relate to a case under Title 11

21  and are undoubtedly within the scope of federal bankruptcy jurisdiction under Section 1334(b) of

22  Title 28.  Furthermore, with respect to property of the estate, that federal bankruptcy jurisdiction is

23  *in rem* and exclusive.  28 U.S.C. §1334(e)(1); *see H.K. & Shanghai Banking Corp., Ltd. v. Simon (In*

24  *re Simon),* 153 F.3d 991, 996 (9th Cir. 1998).

25      Jurisdiction was not lost after Defendant's foreclosure of DOT # 1 because, as the motion to

26  dismiss confirms, Debtor-Plaintiff continues to maintain a claim of equitable ownership in the

27  Property.  *See* AP Docket # 77 (Motion to Dismiss AP at 7:24-8:3 ["The case is in large part about

28  the 'Investors' equitable ownership of the Antioch Loan trust deed, <u>and after foreclosure the</u>

equitable ownership of the Property, legal title to which was removed from the bankruptcy estate via the foreclosure sale."]).  Related, the gravamen of the Complaint is not contingent on Debtor-Plaintiff holding legal title to the Property.  AP Docket # 1 (Complaint at ¶ 33 ["Debtor-Plaintiff and the holders of DOT #1 are now on equal footing vis a vis their respective interests in and priorities to the subject property."]; Prayer for Relief at ¶ 1 [seeking a "judicial determination of the validity, extent and priority of the lien of the Defendants in the subject property and that the interest of the Debtor-Plaintiff is on equal footing to that of the interests of the Defendants"]; Prayer for Relief at ¶ 3 [seeking "an Order and Judgment quieting title to the subject property in the name of Debtor-Plaintiff and against any and all claims of priority by the Defendants."]).

This above-described federal bankruptcy jurisdiction is vested in the district court and is delegable to bankruptcy judges.  28 U.S.C. §157(a).  In the Eastern District of California, the district court has made this delegation pursuant to General Orders 182 and 223.  Based on this delegation, the bankruptcy judges are authorized to enter final orders, judgments, and decrees in core proceedings.  28 U.S.C. §157(b)(1).  The determination whether something is property of the estate is a core matter. *See, e.g., Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 138 B.R. 442, 445 (Bankr. D. Del. 1992) (concluding that determination regarding property of the estate is core); *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 105 (Bankr. D. Del. 2008) (concluding that matters requiring declaration whether property is property of the estate are core); *Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 394–95 (Bankr. E.D. Pa. 2002) (proceeding to determine whether certain property rights are property of the estate under section 541 is core, even if determination rests upon interpretation of state law).

Defendant impliedly consented to the bankruptcy judge issuing final orders by filing the motion for summary judgment and Defendant hereby expressly confirms that consent now.  The Ninth Circuit has recognized the authority of the bankruptcy court to enter final orders with the parties' consent in the type of "core Article III" matters identified in *Stern v. Marshall*, — U.S. —, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).  *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th

Cir. 2012), *cert. granted* 133 S.Ct. 2880 (2013).[5]

**B.      Standards for ruling on motions for dismissal under Rule 41(a)(2).**

Debtor-Plaintiff has requested a dismissal without prejudice of the Complaint pursuant to Federal Rule of Civil Procedure 41(a)(2), made applicable by Bankruptcy Rule 7041:

> (a) Voluntary Dismissal.
>
>          . . .
>
> (2) By Court Order; Effect. Except as provided in Rule 41(a)(1)*, an action may be dismissed at* the plaintiff's request only by court order, on terms that the court considers proper.   . . .   Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

The purpose of Rule 41(a)(2)  is "to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal." *Stevedoring Services of America v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) (citations omitted).

A motion to dismiss under Rule 41(a)(2) presents three issues for the Court to address:  (1) whether to allow dismissal at all; (2) whether the dismissal should be with or without prejudice; and (3) whether any "terms" should be imposed on the dismissal.  *Williams v. Peralta Comm. College Dist.*, 227 F.R.D. 538, 539 (N.D. Cal. 2005) (citing *Burnette v. Godshall*, 828 F.Supp. 1439, 1443 (N.D. Cal. 1993), *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co., Inc.,* 72 F.3d 766, 767 (9th Cir. 1995)).  Addressing these issues is left to the sound discretion of the trial court, which will not be disturbed unless the court abuses its discretion.  *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996).  Further, an abuse of discretion occurs when the trial court "bases its decision on an erroneous view of the law or a clearly erroneous view of the facts." *Id.*

---

[5] The Ninth Circuit's published decision in *Bellingham* is the law of the circuit and the bankruptcy court is bound to follow it.  *See, e.g., Chambers v. United States,* 22 F.3d 939, 942 n. 3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds,* 47 F.3d 1015 (9th Cir. 1995); *see also Yong v. I.N.S.,* 208 F.3d 1116, 1119 n. 2 (9th Cir. 2000) ("once a federal court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority").

1    This opposition focuses on the second and third issues.[6]

2    **C.    The Court should dismiss the *pari passu* claim in the first and second claims for relief <u>with prejudice</u>.[7]**

3

4    With respect the second issue, the Ninth Circuit has held that the court may dismiss claims

5    with prejudice where the plaintiff has requested a voluntary dismissal "only to avoid a near-certain

6    adverse ruling." *Maxum Indem. Ins. Co. v. A-1 All American Roofing Co.*, 299 Fed.Appx. 664, 666

7    (9th Cir. 2008) (citing *Terranova v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988).  In *Terranova*, the

8    Ninth Circuit found that the district court did not abuse its discretion in denying a motion to dismiss

9    a habeas petition three months after a motion for summary judgment had been filed and after the

10   magistrate judge had issued a report and recommendation on the motion that was adverse to

11   petitioner.  *Terranova, supra*, 852 F.2d at 429-30.  Similarly, in *Maxum*, the Ninth Circuit affirmed

12   the district court's dismissal with prejudice because "[p]rior to A-1's motion to dismiss under Rule

13   41(a)(2), the district court had indicated to both parties how it planned to rule on A-1's claim against

14   Perkins." *Maxum, supra,* 299 Fed.Appx. at 666.

15   At least one Eastern District case has recently addressed these issues and recognized that in

16   determining whether to dismiss a claim with or without prejudice, "[t]he court does consider whether

17   plaintiffs 'were dilatory in prosecuting the case and seeking a dismissal' . . . and that defendant has

18   filed a motion for summary judgment." *Edstrom v. NDEX West, LLC*, 2012 WL 4092420 at * 2, fn.

19   3 (E.D. Cal. 2012).  In *Edstrom*, defendant requested that plaintiff's case be dismissed with prejudice

20   because plaintiff had not opposed defendant's motion for summary judgment; the district court

---

21   [6] With respect to the first issue, it is appropriate to deny a plaintiff's motion for dismissal if the

22   defendant will suffer some plain legal prejudice as a result of the dismissal.  *Westlands*.  The Ninth Circuit has clarified that "legal prejudice" focuses on the rights and defenses available to a defendant

23   in future litigation, and includes "prejudice to some legal interest, some legal claim, some legal argument." *Id.* at 97.  Legal prejudice does not exist just because a defendant will face a second

24   lawsuit or because a defendant has incurred substantial legal expenses in the first lawsuit; in those instances, the trial court can condition the dismissal on the payment of costs and attorneys' fees for

25   work that cannot be used in future litigation. *Id.* at 97-98.  While Defendant believes that Debtor-Plaintiff is advancing frivolous claims and will stop at no expense (fiscal or ethical) to do so,

26   Defendant does not request that the Court deny the motion to dismiss outright under the standards

27   articulated in *Westlands Water*.  However, Defendant will take no objection should the Court reach this conclusion on its own.

28   [7] Defendant does not oppose the request by defendants Walter Clarke and Oxford Investment Partners, LLC that the third (and unrelated) claim for relief be dismissed.

1  declined this request, but based its decision on unique facts that are not present here:  "there is no

2  indication that plaintiffs are seeking dismissal at this stage in order to avoid an adverse ruling; on the

3  contrary, it is clear that plaintiffs sought to dismiss this matter over one year ago and apparently

4  were under the mistaken impression that this matter had indeed been dismissed."  *Id.* at * 2; *see also*

5  *Helio, LLC v. Palm, Inc.,* 2007 WL 1063507 at * 2 (N.D. Cal. 2007 ("a voluntary dismissal may not

6  be appropriate where the sole reason for the plaintiff's request for dismissal is apprehension of a

7  possible adverse ruling on a pending post-trial or dispositive motion.").

8      Debtor-Plaintiff's motion to dismiss fails to address this critical second step of the Rule

9  41(a)(2) analysis, and for good reason:  Debtor-Plaintiff was actively prosecuting its *pari passu*

10  claim in this Court up until the precise minute this Court issued its tentative ruling, at which point

11  Debtor-Plaintiff requested this dismissal "only to avoid a near-certain adverse ruling."  *Maxum,*

12  *supra,* 299 Fed.Appx. at 666.

13      This conclusion is amply supported by the record.  As set forth above, Defendant foreclosed

14  DOT # 1 in February 2013.  Following this foreclosure, Debtor-Plaintiff did not move to dismiss

15  their Chapter 11 case or this Adversary Proceeding.  On the contrary, Debtor-Plaintiff dismissed

16  with prejudice the "Oxford Investors" and continued to prosecute this action against Defendant, the

17  owner of the Property.  Specifically, Debtor-Plaintiff propounded discovery to Defendant and

18  noticed Defendant's deposition.  MTD Exhibit ## 1-2.  Further, Debtor-Plaintiff responded to

19  Defendant's written discovery on the *pari passu* claim, and David Choo confirmed at his deposition

20  that it is "currently" Debtor-Plaintiff's position that both Debtor-Plaintiff and Defendant hold title to

21  the Property.  MTD Exhibit ## 3-5.

22      Moreover, Julian Bach's motion to withdraw confirmed that, as of August 23, 2010, Debtor-

23  Plaintiff "is seeking redress in this adversary proceeding" based on alleged issues with title to the

24  Property.  AP Docket # 34 (Bach Declaration at ¶¶ 4-5).  Further, Debtor-Plaintiff's new counsel

25  represented they "will appear at the scheduled hearing date, October 30, 2013, to request an

26  extension of time to respond to the Motion."  AP Docket # 71 (emphasis added).  Nowhere in these

27  filings is there any hint or suggestion that Debtor-Plaintiff ever intended to dismiss this case.

28      Finally, Debtor-Plaintiff's post-hoc reasons for requesting a dismissal are easily refuted by

572168.5

the record.  Specifically, Debtor-Plaintiff suggests that CMR III and other "Certain Investors" might have an equitable interest in the Property, and the CMR trustee should be involved in making decisions related to those claims.  AP Docket # 77 (Motion to Dismiss AP at 8:4-13).  These arguments ignore several critical facts:

□      The CMR trustee's Third Status Conference Statement reflected that CMR III owned Debtor-Plaintiff, Debtor-Plaintiff owned the Property subject to DOT # 1, and Debtor-Plaintiff had no equity in the Property.  Main CMR Docket ## 950, 950-1.

□      When Defendant filed a motion for relief from the automatic stay in the CMR bankruptcy to foreclose DOT # 1, the CMR trustee filed a statement of non-opposition and the Northern District granted the motion.  Main CMR Docket ## 967, 975.

□      These events allowed Defendant to record its Notice of Default and Notice of Trustee's Sale to foreclose DOT # 1 which, in turn, prompted Debtor-Plaintiff to file this Chapter 11 to stop the trustee's sale.  Main 2 Antioch Docket ## 1, 12, 14; AP Docket # 1 (Complaint at ¶ 29).

□      Debtor-Plaintiff's Schedules and Joint Status Report stated that <u>Debtor-Plaintiff</u> owned the Property, not CMR III or some other party.  Main 2 Antioch Docket ## 12, 14.

□      Debtor-Plaintiff's Complaint confirmed that <u>Debtor-Plaintiff</u> owns the *pari passu* claim, not CMR III or some other party.  AP Docket # 1 (Complaint at ¶ 38).

□      The assignment of DOT # 2 from CMR III to Debtor-Plaintiff and the subsequent Trustee's Deed Upon Sale confirm as a matter of law what is set forth in the CMR trustee's Third Status Conference Statement and in Debtor-Plaintiff's Schedules, Joint Status Report, and Complaint:  Debtor-Plaintiff owned and foreclosed DOT # 2 and is therefore the owner of the alleged post-foreclosure "equitable interest" in the Property.  AP Docket # 51 (MSJ Exhibit ## 18-19).

Finally, Debtor-Plaintiff will likely it is "not fair" that Defendant filed the summary judgment motion with the motion to withdraw pending.  But Debtor-Plaintiff is not a sympathetic

16

character. On the contrary, the above history reflects that Debtor-Plaintiff and the CMR entities are very sophisticated, legally savvy, and well financed — when they want to be. Debtor-Plaintiff had money to pay Mr. Bach (he did not withdraw for lack of money) and Debtor-Plaintiff secured a $20,000 cash retainer from guarantor HMV for new counsel. Main 2 Antioch Docket # 138 (Application to Employ Counsel at ¶¶ 5-6). Further, Debtor-Plaintiff had five weeks after the motion to withdraw was filed, and two weeks after the motion for summary judgment was filed, to secure new counsel. Its decision to not secure new counsel or oppose the motion is a self-inflicted wound. And Defendant's recent motion included David Choo's deposition testimony to show the Court that even Debtor-Plaintiff's PMK has no plausible explanation or evidence in support of its *pari passu* claim.

In sum, these facts are more compelling than those in *Maxum* and *Terranova*. Debtor-Plaintiff and its related entities are playing fast and loose in our courts: their *pari passu* claim is refuted by their own loan documents, their own Standstill Agreement, and their own sworn testimony. Debtor-Plaintiff requested this dismissal at the last possible minute, <u>after</u> this Court had issued its tentative ruling to grant Defendant's motion for summary judgment "across the board." And Debtor-Plaintiff's attempt to explain why a dismissal is required is easily refuted by the record. This Court has discretion — and more than enough good cause — to dismiss <u>with prejudice</u> Debtor-Plaintiff's *pari passu* claim set forth in the first and second claims for relief.

**D. In the alternative, the Court should condition a dismissal without prejudice on Debtor-Plaintiff's payment of Defendant's costs and attorneys' fees, and impose any other conditions/sanctions that the Court deems proper.**

As set forth above, a court may order an action dismissed "on terms that the court considers proper." Fed. R. Civ. Proc. 41(a)(2). The decision as to the terms and conditions that should be imposed, if any, is within the discretion of the trial court. *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir.1980). Where a court imposes conditions that are unacceptable to the plaintiff, the plaintiff must be given the option to withdraw the motion and continue to trial. *Lau v. Gledora Unified School Dist.*, 792 F.2d 929, 930 (9th Cir. 1986). Further, if a plaintiff fails to comply with conditions of dismissal, including the payment of attorneys' fees, the court may enter a dismissal with prejudice. *Id.* at 930, fn. 2.

1    In the event this Court does not dismiss with prejudice Debtor-Plaintiff's *pari passu* claim, it

2    should condition a dismissal without prejudice on several items. First, the Court should condition a

3    dismissal without prejudice on Debtor-Plaintiff's payment of Defendant's costs and attorneys' fees.

4    *Westlands Water*, which is cited in Debtor-Plaintiff's moving papers, held that the expense incurred

5    in defending an action that is dismissed without prejudice does not amount to legal prejudice

6    because "[t]he defendants' interests can be protected by conditioning the dismissal without prejudice

7    upon the payment of appropriate costs and attorney fees." *Westlands Water, supra,* 100 F.3d at 97-

8    98. While imposing fees is not mandatory, "it is usually considered necessary for the protection of

9    the defendant" and the court should consider whether plaintiff has a "realistic chance of prevailing"

10    on the claims dismissed. *Stevedoring, supra,* 889 F.2d at 921-22 (where plaintiff dismissed case

11    after losing alter-ego theory at writ-of-attachment stage, court denied request to condition dismissal

12    on award of fees because plaintiff had a realistic chance of prevailing). Further, a defendant is only

13    entitled to recover "attorney fees for work which cannot be used in any future litigation of these

14    claims." *Westlands Water, supra,* 100 F.3d at 98.

15    In Defendant's estimation, Debtor-Plaintiff has engaged in some pretty poor conduct,

16    including its prosecution of a *pari passu* claim that is lacking in factual or legal support. In its

17    Schedules and Status Report, Debtor-Plaintiff admitted that DOT # 1 was senior lien. Main Docket

18    ## 12, 14. Several months later, Debtor-Plaintiff began peddling its *pari passu* claim through

19    Graham Seel, who had previously testified to the Northern District that DOT # 1 was a senior lien.

20    This Court's tentative ruling agreed with Defendant's analysis "across the board." Needless to say,

21    Defendant has incurred substantial fees over the past several months of litigation, many of which

22    cannot be used in a subsequent proceeding. As a result, Defendant requests that the Court (1)

23    condition a dismissal without prejudice on the payment of Defendant's costs and attorneys' fees and

24    (2) set a further briefing schedule for Defendant's attorneys' to review and redact their bills and

25    present them to the Court for consideration.

26    Second, a dismissal without prejudice should also include a condition requiring Debtor-

27    Plantiff to stipulate that all discovery obtained in this action (written, documents, depositions, and

28    third-party productions) can be used in any subsequent proceedings brought in state or federal court.

1  *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1276 (5th Cir. 1990) (dismissal conditioned on

2  plaintiff's stipulation that they not oppose use of existing discovery in state court action).  If Debtor-

3  Plaintiff will not agree to this stipulation, Defendant should recover all discovery-related attorneys'

4  fees in this action.  *Westlands Water, supra,* 100 F.3d at 98 (attorneys' fees should include fees for

5  work which cannot be used in any future litigation).

6      Finally, the Court should make all terms of dismissal clear and unequivocal.  Related, the

7  Court should impose a reasonable-but-short deadline for compliance — and expressly state that

8  nonpayment by that date shall convert the conditional dismissal without prejudice into a final

9  dismissal with prejudice.  *Lau, supra,* 792 at 930, fn. 2.

10  **V.    CONCLUSION**

11      For all of the reasons set forth above, Defendant respectfully requests that the Court

12  (1) dismiss with prejudice Debtor-Plaintiff's *pari passu* claim set forth in the first and second claims

13  for declaratory relief and quiet title, respectively; or (2) in the alternative, condition a dismissal

14  without prejudice on terms that are proper, including that Debtor-Plaintiff be required to pay

15  Defendant's costs and attorneys' fees, or, in the event of non-compliance, face a dismissal with

16  prejudice.

17  DATED:  November 13, 2013            **BOUTIN JONES INC.**
                                         Attorneys at Law
18
                                         By: _____ /s/ *Michael J. Kuzmich* _____
19                                              MICHAEL J. KUZMICH

20
                                         Attorneys for defendant Antioch Loan, LLC
21

22

23

24

25

26

27

28

572168.5