Dean T. Kirby, Jr.   090114
Roberta S. Robinson 099035
KIRBY & McGUINN, A P.C.
707 Broadway, Suite 1750
San Diego, California 92101
Telephone: (619) 685-4000
Facsimile:  (619) 685-4004
Email:  dkirby@kirbymac.com

Proposed Attorneys for Plaintiff
2 Antioch, LLC, Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

Sacramento Division

| | |
|---|---|
| In re<br><br>2 ANTIOCH, LLC<br><br>            Debtor. | Case No.      12-33698<br><br>Chapter 11<br><br>DC No.        DTK-2<br><br>Adversary No. 12-02705 |
| 2 ANTIOCH, LLC,<br><br>            Plaintiff<br><br>v.<br><br>ANTIOCH LOAN, LLC, et al.<br><br>            Defendants. | DATE:   November 27, 2013<br><br>TIME:    10:00 a.m.<br><br>DEPT:    Courtroom 34, Dept. D<br>         U.S. Bankruptcy Court<br>         501 I Street, 6th Floor<br>         Sacramento, CA 95814<br><br>JUDGE:   Hon. Robert S. Bardwil |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

PLAINTIFF'S MOTION TO DISMISS ADVERSARY PROCEEDING

I.  INTRODUCTION

A review of the docket in this case shows that defendant Antioch Loan has filed nothing of substance in this adversary proceeding other than its summary judgment motion. The brief filed in support of that summary judgment motion was 16 pages long. The Debtor has now moved to dismiss this action without prejudice. The brief of Antioch Loan opposing that motion (the primary point of which is to recover attorney fees) is 19 pages long.

Antioch Loan's opposition is itself an invitation for the Court to entertain a fee application and determine objections thereto. As explained below, under Ninth Circuit law if the Debtor cannot or will not pay the exit fee which Antioch Loan urges this Court to impose, the Court cannot order an automatic "voluntary" dismissal with prejudice. The most that this Court can do is enter an order which puts Plaintiff to an election as to whether to: (i) accept dismissal with prejudice; (ii) pay money to obtain a dismissal without prejudice; or (iii) continue the lawsuit. .

Should the Debtor elect not to accept a "voluntary" dismissal with prejudice and proceed to the entry of a judgment, it would request leave to file a late opposition to the motion (which would presumably be contested). This would necessitate a reply on the part of Antioch Loan.

If the point of Antioch's opposition is to recover attorney fees, the result will be to generate more fees and more litigation than, literally, have taken place in this entire adversary proceeding so far. Instead this Court should exercise its discretion to cut the litigation short now by allowing dismissal without prejudice. The outcome of the summary judgment motion is not certain, if it were allowed to be opposed (see Section III of this brief below). Even the jurisdiction of the Bankruptcy Court to

"quiet title" to the property lost in foreclosure is far from clear, particularly where the rights of third parties are implicated.

## II. THE POSITION OF THE THREE DEFENDANTS

At the inception of the chapter 11 case, this was a single asset real estate Debtor. The complaint in this adversary proceeding stated three claims for relief. After some stipulated dismissals three defendants remain: Antioch Loan, LLC, Oxford Investor Partners, LLC and Walter Clarke. All three defendants are named in the first two claims for relief. These first two claims for relief sought in essence to determine the beneficial ownership of a trust deed on the Debtor's property, referred to in the Complaint as "DOT#1." Defendant Antioch Loan was the beneficiary of record under DOT#1 via an assignment from a group of investors referred to as the "Oxford Group." The third claim for relief is a claim for damages naming only defendants Oxford Investment Partners and Clarke.

The position of Defendants with respect to this Motion to Dismiss has been a bit confused because of tag team legal representation (which is the product of the involvement of a title insurance company). An Answer was filed on behalf of all three defendants by Ms. Davis' firm Cox Castle. Then an association of counsel was filed adding (but not substituting) Mr. Kuzmich's firm Boutin Jones as co-counsel together with Cox Castle as to defendant Antioch Loan only.

Ms. Davis has filed papers supporting dismissal of the third claim for relief. Her papers now for the first time show her as attorney only for Oxford and Clarke, and not for Antioch Loan. Ms. Davis's opposition does not mention whether Oxford and Clarke support or oppose the dismissal of the first and second claims for relief as

to them. The Debtor wishes to dismiss all claims for relief as to Oxford and Clarke without prejudice regardless of how the opposition of Antioch Loan is resolved.

### III. PLAINTIFF CANNOT BE ORDERED TO VOLUNTARILY DISMISS ITS CASE WITH PREJUDICE. IT CAN ONLY BE GIVEN THE OPTION TO DO SO

Under Federal Rule of Civil Procedure 41(a)(2), "voluntary dismissal cannot take effect until a court order has been entered *and* the terms and conditions imposed by the court are complied with. This grants to the plaintiff the option to refuse the voluntary dismissal if the conditions imposed are too onerous. [*italics* in original]" *Lau v. Glendora Unified School Dist.*, 792 F.2d 929, 930 (9th Cir. 1986). In its opinion in *Lau*, the Ninth Circuit quoted *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 367-68 (D.C. Cir.1981), which held that "Under the rule [41(a)(2) ], a plaintiff has the choice between accepting the conditions and obtaining dismissal and, if he feels that the conditions are too burdensome, withdrawing his dismissal motion and proceeding with the case on the merits."

In *Lau,* supra., the plaintiff moved to dismiss a lawsuit without prejudice and the District Court granted the motion conditioned on payment of attorney fees. The Ninth Circuit reversed and remanded "with the instruction that the district court issue a new ruling on Lau's motion for a voluntary dismissal and provide Lau a reasonable period of time within which to refuse the conditional voluntary dismissal by withdrawing her motion for dismissal or to accept the dismissal despite the imposition of conditions." *Lau v. Glendora Unified Sch. Dist.*, supra., 792 F.2d at 931.

Antioch Loan has requested that this Court condition dismissal without prejudice upon payment of an *unspecified amount* of attorney fees. The amount of those attorney fees may well be in dispute given the requirement that "the defendants

should only be awarded attorney fees for work which cannot be used in any future litigation. . . ." *Westlands Water Dist. v. United States,* 100 F.3d 94, 96-97 (9th Cir. 1996); *Koch v. Hankins,* 8 F.3d 650, 652 (9th Cir.1993).[1]

If the Court in its discretion chooses to condition dismissal without prejudice upon payment of attorney fees, then in order to comply with the holding *in Lau v. Glendora Unified Sch. Dist.*, supra. it should set a deadline for the filing of a fee application by Boutin Jones, set a deadline for opposition, and a hearing to determine the amount to be imposed as a condition. Once that amount is determined, the Court should then provide the Debtor with a "reasonable amount of time" to either withdraw the motion to dismiss or accept the dismissal subject to the payment condition.

IV.     ANTIOCH LOAN IS NOT CERTAIN TO WIN

The Motion to Dismiss does mention the fact that Antioch Loan's Motion for Summary Judgment was filed far in advance of the Court-imposed deadline to do so, while Mr. Bach's Motion to Withdraw was pending. This was of course in no way unethical. It was, however, *tactical*. In connection with his motion to withdraw, Mr. Bach did not seek any relief, such as a continuance, designed to avoid prejudice to his client. The Order authorizing Mr. Bach to withdraw was entered one week before the deadline to oppose the Motion for Summary Judgment. Kirby & McGuinn was not retained to appear in the case until October 24, after the deadline had passed. On

---

[1] The Debtor is prepared to accept the condition suggested by Antioch Loan, that all discovery taken by either side in this case (including deposition transcripts) may be used by either the Debtor or by Antioch Loan in any future proceeding, in the same manner as it could be used if actually taken in that subsequent proceeding.

5
REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

October 24 Kirby & McGuinn filed an appearance advising the Court of its intention to seek a continuance of the hearing so that opposition could be filed.

At the hearing the Debtor chose, appropriately, to first and immediately notify the Court of the Debtor's intent to move to dismiss the bankruptcy and the adversary proceeding. Having heard this, the Court continued the summary judgment hearing sua sponte to December 11. There was therefore no discussion of leave to file a late opposition.

Had counsel for the Debtor decided to ask first for a continuance and leave to file a late opposition, before telling the Court of the Debtor's intent to move to dismiss, the Court in its discretion may well have granted that request on October 30. If the Court had declined that request and granted the Motion for Summary Judgment on October 30, the Debtor could have filed a motion for relief under Federal Rule of Civil Procedure 55, which is applicable to interlocutory orders.

The standard for relief set forth in Rule 55 is simply "good cause." In connection with a Rule 55 motion, the Debtor could have made a full record as to the reasons why the deadline was missed, why a continuance wasn't sought by Mr. Bach and why there was a delay in consulting and retaining substitute counsel. That request would then have been determined in light of those facts and in light of the following: (i) the policy in favor of determinations on the merits; (ii) that Antioch Loan's Motion would not have disposed of the whole case: and (iii) that the deadline for *filing* dispositive motions was then December 15, then still six weeks in the future.

1   The Motion for Summary Judgment is based *primarily* on the Standstill

2   Agreement[2] (Exh. 15 attached to the Notice of Lodgment filed herewith). The

3   Memorandum filed in support of the Motion for Summary Judgment (D.I. 48 fld

4   9/27/13) refers to the Standstill Agreement 34 times and states in its Conclusion that

5   "the Standstill Agreement superseded all prior agreements and understandings"

6   concerning the priority of DOT#1 and DOT#2.

7   The Standstill Agreement in its opening paragraph says that it was entered into

8   between CMR Mortgage Fund II, LLC, CMR Mortgage Fund III, LLC, and California

9   Mortgage and Realty, Inc. "on the one hand, and the persons and entities subscribing

10  their names hereto by executing a counterpart signature page to this Agreement

11  (collectively, the "Investors")."[3] The "Investors" are not otherwise named in the

12  Standstill Agreement, and many of the attached counterpart signature pages[4] are

13  illegible.

14  There are 19 counterpart signature pages included in Exhibit 15 (pp. 203-321).

15  Immediately following the signature pages is a two page list (pp. 322-23) of the

16  Investors and their interests loan by loan, which is almost completely illegible. It

---

[2] Filed in support of the Motion for Summary Judgment as Exhibit No. 15, Docket Index No. 58). References to page numbers are to those added at the bottom by counsel for Antioch Loan (i.e., pp. 283-328). The Debtor's Motion to Dismiss briefly discusses the Standstill Agreement at page 3, but refers to Exhibit 31 submitted in support of the Motion for Summary Judgment (D.I. 62). The difference is that Exhibit 31 is an unexecuted copy and doesn't include the counterpart signature pages. The undersigned attorney apologizes for that confusion.

[3] Exh 15 p. 284.

[4] Exh. 15 pp. 303-316.

appears, however, that this list names at least twice as many "Investors" as those parties whose counterpart signature pages are included in Exhibit 15.

Who the Investors are, and what the capacity of California Mortgage Realty, Inc., CMR II and CMR III was with respect to those Investors, is something that cannot be ascertained from the four corners of the Standstill Agreement. Recital B of the Standstill Agreement (Exh 15 p. 284) refers to an unnamed group of "Certain Investors" as "REO Owners," who "now indirectly own" several properties, including the Antioch Property. These "Certain Investors" are not otherwise named anywhere in the Standstill Agreement, including the two page list which follows the signature pages (Exh 15 pp. 322-23).

The Standstill Agreement ambiguously defines "Investors" as including both the parties who signed the Agreement and *"certain subsets of Investors with respect to a certain Loan or Property or REO Owner . . . ."* (Exh. 15 p. 286) While the Standstill Agreement provides for a forbearance, it does not include a release or a subordination of any interest of one group of "Investors" to another.

All of the Investors, in both DOT#1 and DOT#2, were clients of California Mortgage Realty, Inc., *which serviced both loans.* Now the principals of that servicing agent have testified that their knowledge and intent (chargeable as a matter of law to their principals the Investors) was that all CMR Investors were to share in the Antioch loan.

The Debtor submits that the rights of the unnamed "Certain Investors" who "indirectly own[ed]" the Antioch Property are unaffected by the Standstill Agreement. These "Certain Investors" did not sign the Standstill Agreement, and the Standstill Agreement did not purport to subordinate their interests to other clients of CMR.

Nothing in the Standstill Agreement, and nothing in the Summary Judgment Motion, establishes how the rights of these "Certain Investors" could be waived, or under what authority.

An action to quiet title by either the Debtor or by Antioch Loan arises under California statute, not the Bankruptcy Code. Calif. Code Civ. Proc. §§ 760.010 - 765.060. If the "Certain Investors" were not known, the statute allows the plaintiff (or a counterclaimant) to allege this, and then provides that unknown defendants may be served by publication. Calif. Code Civ. Proc. §§ 762.020, 762.060, 763.010. Antioch Loan did not counterclaim to quiet title and didn't seek to name these "Certain Investors." Yet if judgment were entered in its favor Antioch Loan might later unjustifiably claim that its judgment binds parties not before the Court like CMRIII, its bankruptcy trustee, or the "Certain Investors." The fact that the CMR bankruptcy trustee did not oppose Antioch Loan's motion for relief from stay to complete foreclosure of the first trust deed is not the same thing as an abandonment or release of any interest by the CMR Trustee or by these "Certain Investors."

In summary, the Standstill Agreement, on which Antioch Loan's summary judgment motion is based, purports to be an agreement between California Mortgage Realty, Inc., the loan servicer, and the CMR mortgage funds, on the one hand, and a group of "Investors" on the other who are not named, or even identifiable. The Standstill Agreement itself recites that "Certain Investors" "indirectly own" the Antioch Property, but doesn't name them. The Standstill Agreement doesn't recite that the CMR parties signed it on behalf of the "Investors." In fact, the Standstill Agreement is structured as a contract *between* the CMR parties and the "Investors."

The Standstill Agreement thus does not establish that there are no triable issues of fact in an action to quiet title to the Antioch Property.

V.  BANKRUPTCY JURISDICTION IS UNCERTAIN

In its tentative ruling on the Motion for Summary Judgment, this Court addressed its own jurisdiction sua sponte in a brief discussion of the case of *Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.),* 702 F.3d 553 (9th Cir.2012), cert. granted, 133 S.Ct. 2880 (2013).  The Debtor submits that the Bankruptcy Court's jurisdiction over this quiet title action is questionable in light of *Bellingham*, and that the existence of jurisdiction by consent in this case is questionable as well.

When Antioch Loan completed its foreclosure and became the record title holder to this property, this action came to most resemble one to quiet disputed title to real property rather than one, strictly speaking, to determine the "validity and priority of liens" on the Debtor's property.  To put it another way, the action now places in issue the equitable ownership of the Antioch Property post foreclosure.

As stated above, an action to quiet title as to real property arises under state law, in this case specifically California Code of Civil Procedure sections 760.010 - 765.060.  Under California Code of Civil Procedure section 764.030(a), the judgment in a quiet title action "is binding and conclusive on . . . [a]ll persons known and unknown who were parties to the action and who have any claim to the property . . . ."

The Standstill Agreement states that the counterparties, the people who were entering into the agreement with the CMR entities, were a group of "Investors," including "Certain Investors" who were said to "indirectly own" the Antioch Property.  *Bellingham,* supra., stands for the proposition that the bankruptcy courts have no

1 | jurisdiction to determine the rights of non-creditor third parties even as to "core"
2 | matters such as a fraudulent conveyance claims, much less as to claims entirely based
3 | on state law, as is the quiet title claim here.
4 |     *Bellingham,* supra., holds that an objection to Bankruptcy Court jurisdiction
5 | may be waived.  The Ninth Circuit held that jurisdiction by waiver had been created
6 | when the defendant had failed to object to jurisdiction before entry of judgment and
7 | even on appeal to the District Court.
8 |     Here, all three defendants objected to jurisdiction in their Answer, and only
9 | Antioch Loan has recently changed position after the Court entered its tentative ruling
10 | on the Motion for Summary Judgment.  This was a tactical maneuver, an attempt to
11 | straddle the fence on jurisdiction in order to abide the outcome in the Bankruptcy
12 | Court.  This is exactly the kind of conduct disapproved or in *Bellingham,* supra., and
13 | in *Stern v. Marshall,* ____ U.S. ____, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).
14 |     " [I]n *Stern*, [the defendant] litigated in the adversary proceeding for over two
15 | years and only raised the issue regarding the bankruptcy court's authority to enter the
16 | final judgment after an adverse ruling and for the first time on appeal. "[T]he
17 | consequences of a 'litigant ... "sandbagging" the court—remaining silent about his
18 | objection and belatedly raising the error only if the case does not conclude in his
19 | favor,'—can be particularly severe." *Stern,* 131 S.Ct. at 2608." *In re Washington*
20 | *Coast I, L.L.C.,* 485 B.R. 393, 409-10 (B.A.P. 9th Cir. 2012).
21 |     Here, the Plaintiff is entitled to ask:  If Antioch Loan can change its position on
22 | jurisdiction based on the tentative summary judgment ruling, why isn't the Debtor
23 | entitled to do the same thing?
24 | / / /

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS

Overlaying all of this is the broader uncertainty as to whether jurisdiction may *ever* be conferred by consent.  Although *In re Bellingham Ins. Agency, Inc.),* 702 F.3d 553 (9th Cir.2012), cert. granted, 133 S.Ct. 2880 (2013) is still the law in this circuit, today it stands in the minority of the circuits who have decided this issue.  Cf. *Wellness Int'l Network, Ltd. v. Sharif,* 727 F.3d 751 (7th Cir. 2013); *Waldman v. Stone,* 698 F.3d 910 (6th Cir. 2012) cert. denied, 133 S. Ct. 1604, 185 L. Ed. 2d 581 (U.S. 2013).  Certiorari has been granted in *Bellingham* and a (hopefully) definitive answer will not be heard until next summer.  This uncertainty should be a factor influencing the Court's discretion in deciding whether to allow dismissal of this case without prejudice now.

Finally, this Court should consider that no one has opposed the Debtor's motion to dismiss the underlying bankruptcy case.  Antioch Loan has not attempted to explain how this Court could, or would wish to, exercise continuing "related to" jurisdiction over an adversary proceeding when there will not be a bankruptcy case pending.

VI.  **CONCLUSION**

The opposition of Antioch Loan is an invitation to triple the amount of litigation which has already occurred in this, all in the name of recovering attorney fees for, in essence, the filing of a single motion.  This Court should decline that invitation.

DATE:  November 18, 2013			KIRBY & McGUINN, A P.C.


				By:   /s/ Dean T. Kirby, Jr.
				Dean T. Kirby, Jr.
				Proposed Attorneys for
				2 Antioch, LLC, Debtor in Possession

12
REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS